[No. G033067. Fourth Dist., Div. Three. Dec. 20, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
SUPRITI SONI, Defendant and Appellant.

## COUNSEL

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Erika Hiramatsu and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SILLS, P. J.**—Supriti Soni appeals from the judgment sending her to prison for three years after a jury convicted her[1] of 19 counts arising from her less-than-honest business dealings of real estate transactions and loan applications. She contends that count II, a misdemeanor charge of filing a false statement (see Pen. Code, § 532, subd. (a)),[2] was filed beyond the applicable statute of limitations period and therefore must be stricken. She also argues that counts IV and V—two separate incidents of recording false documents, a violation of section 115, subdivision (a)—were likewise prosecuted after expiration of the applicable statute of limitations and must be stricken as well. We affirm the judgment.

### I

### FACTS

For the 16 counts for which no contention on appeal was made, we merely summarize the events. Soni and her husband (Vijay) were licensed real estate and loan agents and brokers, and they worked at First Countrywide Realty and Fastrack Funding,[3] among other fictitiously named companies. Soni was known as Sue, Supriti Soni, Priti Soni, Priti Devi, and Priti Lohia. Under these various names, Soni and her husband obtained confidential information from various people—one of whom worked for Vijay and the rest who were clients for properties or mortgages—and then used it to acquire furniture, loan proceeds and commissions, real estate deeds and commissions, a Mercedes Benz automobile, and cash for themselves.

---

[1] Soni's husband, Vijay Soni, was similarly charged and convicted of 15 counts.

[2] All further section references are to the Penal Code.

[3] There were other businesses for which Vijay was the sole owner or signatory for the account.

Soni applied for a California driver's license in 1995 under the name of Priti Soni, and a driver's license in 1998 under the name of Priti Lohia when she already possessed three other driver's licenses under the names of Supriti Soni, Priti Lohia and Priti Soni. The applications included her statement under penalty of perjury that she had not made any other such applications.

In May 1998, Cynthia Linke, an employee of Pier I Imports, received a credit application from Soni, whom she identified in court. The subsequently issued credit card was used twice to purchase goods at the store in March 1998. However, the submitted application was filled out not under Soni's name, but under the name of Bimal Sareen, a woman who employed Vijay and Soni as real estate agents to purchase a house in Upland in 1997, and then became an employee of Vijay in his Upland real estate office in 1998. The application also listed Sareen's Social Security number and date of birth, but listed International Construction Company, a business owned by Vijay, as her employer. It also listed *Soni*'s phone number as Sareen's. Sareen never gave either Vijay or Soni permission to use her name or credit information for any other purpose but to obtain the title and mortgage for the Upland property.

After learning from Pier I Imports—and another business, Homestead House, which likewise extended credit to Soni under Sareen's name—Sareen requested a copy of her credit report. She discovered a mortgage was obtained in her name on a piece of property located in Irvine, California. The location of the property was 14641 Sweetan, Irvine, and the loan was in the amount of $172,000.00. It had been obtained through Electronic Mortgage Banc Limited, which received and filed a deed of trust in that amount. The application for the loan was signed, "R. Sareen," but it was neither the signature of Sareen nor her husband. Similarly, the two signatures on the deed of trust were written "Rakesh and Bimal Sareen" but neither Sareen nor her husband ever signed the document. The notarization for Sareen's signature listed a passport number not related to that of Sareen's passport as identity verification, and the notary failed to get a thumbprint for the signer. The notarization for Sareen's husband was done by Soni's sister, Suniti (Lohia) Shah. She failed to record *either* a thumbprint or proof of identity for the notarization.

The property on Sweetan was occupied by Munira and Mohammad Rajput, who rented the home from Soni. Soni represented to the Rajputs that they could buy the house if they paid her a mortgage broker fee of $10,000.00. After receiving that fee, Soni informed them that they could not qualify for the loan, so they would have to list their son, Samir Aslam, on the title. Soni

was the realtor for both the buyer and the seller on the escrow; and on August 5, 1997, Vijay executed a deed on the property to Aslam, who then deeded the property to a couple named Sareen. Vijay then provided the Rajputs with another deed purportedly signed by the Sareens, transferring title to the Rajputs. On that deed, notarization of the signatures was recorded by Suniti Shah, but no record was made of the event in Shah's notary ledger.

The Sareens never signed any of these documents, and they never knew the Rajputs or their son, Aslam. CPM, a company solely registered to Vijay, received a commission check for this transaction in the amount of $14,630.60.

## II

## DISCUSSION

### Count II: Statute of Limitations on Filing a False Statement

Soni contends the charge in count II must be stricken as it accuses her of a misdemeanor crime allegedly committed more than a year before the date the arrest warrant issued, November 30, 2001. The crime allegedly occurred in May 1998. The general statute of limitations for a misdemeanor is one year. (See § 802, subd. (a).) She raises this issue even though she failed to raise the issue in the court below.

Soni may raise the issue at any time as it is jurisdictional in nature. (See *People v. Chadd* (1981) 28 Cal.3d 739, 756–757 [170 Cal.Rptr. 798, 621 P.2d 837].) However, the Attorney General responds that the offense (§ 532a, subd. (1)) is a "wobbler": an offense which can be either a felony or a misdemeanor. (See *People v. Superior Court (Ongley)* (1987) 195 Cal.App.3d 165, 167 [240 Cal.Rptr. 487]; see also § 532a, subd. (4).) Under section 805, subdivision (a),[4] the statute of limitations for any "wobbler" offense is that of the felony: three years. Thus, argues the Attorney General, the offense is a felony for purposes of statute of limitations, irrespective of the actual level of offense charged. (See *People v. Superior Court (Ongley)*, *supra*, at p. 169.) We agreed previously—albeit in dictum—that "a 'wobbler' (an alternate felony-misdemeanor) filed as a misdemeanor was not time-barred when filed

---

[4] Section 805, subdivision (a) provides that to determine "the applicable limitation of time . . . : [¶] (a) An offense is deemed punishable by the maximum punishment prescribed by statute for the offense, regardless of the punishment actually sought or imposed. Any enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense."

more than a year after the commission of the offense because wobblers, *no matter how filed*, enjoy the three-year statute of limitations applicable to most felonies. [Citations.]" *(People v. Ognibene* (1993) 12 Cal.App.4th 1286, 1290, fn. 1 [16 Cal.Rptr.2d 96], italics added.)

However, the statute of limitations generally for a felony is three years, and this charge was made *more than* three years after the alleged crime. Section 805, subdivision (a) does not provide a *four*-year term, which is essential for permitting *this* case to proceed. The Attorney General responds that the crime—for statute of limitations purposes—is a felony due to section 805, subdivision (a). Because it is a type of fraud as well as a felony, section 801.5[5] applies, providing a four-year statute of limitations for all fraud-type offenses "described in subdivision (c) of Section 803 . . . ."

Section 803, subdivision (c), states that it "applies to an offense punishable by imprisonment in the state prison, a material element of which is fraud or breach of a fiduciary obligation, . . . including, but not limited to, the following offenses: [¶] (1) Grand theft of any type, forgery, falsification of public records or acceptance of a bribe by a public official or . . . employee." However, Soni argues that she never faced an offense "punishable by imprisonment in the state prison . . . ." She emphasizes that section 805, subdivision (a), applies *only* when the prosecution initially charges a felony and through some other action—such as when the trial court reduces the offense to a misdemeanor (see § 17, subd. (b))—that offense *becomes* a misdemeanor. Only when the wobbler is originally filed as a felony does the limitation period under section 805, subdivision (a) get triggered, she argues. (See e.g., *People v. Superior Court (Ongley)*, *supra*, 195 Cal.App.3d at p. 169.) It does not or should not apply if the prosecution chooses to charge the offense solely as a misdemeanor from the outset, she contends. If that is the situation, the offense is no longer a wobbler; it is a straight misdemeanor and must be treated as one for *all* purposes, as stated in section 17, subdivision (b).

This exact issue was resolved adversely to Soni's position in *People v. Sillas* (2002) 100 Cal.App.4th Supp. 1 [123 Cal.Rptr.2d 340]. In that case, the trial court dismissed a case charging Roberto Sillas with *misdemeanor* charges of domestic violence when, on its face, the complaint reflected that more than a year had passed since the crimes' occurrences. In dismissing the case due to the expiration of the misdemeanor statute of limitations of one

---

[5] Section 801.5 provides "[n]otwithstanding Section 801 or any other provision of law, prosecution for any offense described in subdivision (c) of Section 803 shall be commenced within four years after discovery of the commission of the offense . . . ."

year, the *trial* court noted that once "reduced" to a misdemeanor, even a wobbler is deemed to be a misdemeanor "for all purposes." (*Id.* at p. Supp. 3, citing § 17, subd. (b).)

The appellate department reversed that dismissal, holding that section 805, subdivision (a) applies, not the general limitation provisions for misdemeanors. The limitation provision of three years for *all* wobblers applies *irrespective* of the actual prosecutorial choice of misdemeanor status because the statute's terms explicitly declare its application "regardless of the punishment actually sought or imposed. . . ." (*Ibid.*)

Thus, "section 805, subdivision (a) does not distinguish between the original filing and a later reduction. The language in *People v. Superior Court (Ongley)*, *supra*, 195 Cal.App.3d 165, makes no such distinction, and its reasoning applies equally to whether the charging determination is made under section 17, subdivision (b)(4) or (5)." (*People v. Sillas, supra,* 100 Cal.App.4th at p. Supp. 4.)

Soni invites us to reject the *Sillas* rationale and holding, arguing it failed to note that *Ongley*—on which it relied exclusively—involved a charge originally filed a felony and only later reduced to a misdemeanor. Moreover, she contends, the *Sillas* holding is in conflict with language in *People v. Mincey* (1992) 2 Cal.4th 408 [6 Cal.Rptr.2d 822, 827 P.2d 388]. According to Soni, *Mincey* holds that a crime charged as a misdemeanor, even if a wobbler, is a misdemeanor for all purposes thereafter: "If the offense is an alternative felony/misdemeanor (a 'wobbler') initially charged as a felony, the three-year statute of limitations for felonies (see § 801) applies, without regard to the ultimate reduction to a misdemeanor after the filing of the complaint. [Citation.] If, however, the initial charge is a felony but the defendant is convicted of a necessarily included misdemeanor, the one-year limitation period for misdemeanors applies. (§ 805. subd. (b); see 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988), Defenses, § 371, p. 425.)" (*Mincey, supra,* 2 Cal.4th at p. 453.)

*Mincey*'s holding was not as simplistic as Soni implies. Mincey was convicted of the torture-murder of his girlfriend's five-year-old son and the beating of the four-year-old daughter. He was originally charged also with a misdemeanor count of child endangerment and a count of child endangerment that was a wobbler, charged as a misdemeanor. (See former § 273a, subds. (1) & (2), as amended by Stats. 1984, ch. 1423, § 2, p. 4994.) He was found guilty of the "straight" misdemeanor, and then found guilty of the *same* "straight" misdemeanor as a necessarily included offense of the wobbler charge. In other words, he was found guilty of two "straight" misdemeanors and no wobblers at all. (*People v. Mincey, supra,* 2 Cal.4th at p. 453.)

Because no wobbler offenses were involved at all, only the general misdemeanor statute of limitations applied. That general statute was one year, which term had already expired. (*Ibid.*)

The "limitation of time applicable to the lesser included offense, regardless of the limitation of time applicable to the greater offense" (§ 805, subd. (b)) controls when a straight misdemeanor is found as a necessarily included offense of a wobbler. Thus, the *Mincey* holding pivoted on subdivision (b) of section 805, while subdivision (a) of section 805 controls the determination of limitation periods for wobbler offenses, regardless of the misdemeanor or felony status of that charge. As the Attorney General argued, section 805, subdivision (a) is the pertinent provision which results in treating *any* violation of section 532a as a felony for statute of limitations purposes, simply because it is a wobbler.

■ The general limitations term for a felony is three years. The three years had already expired when the arrest warrant issued in this case. But section 805 does more than merely set a felony statutory term of three years as the limitation term for wobblers. It establishes that "[f]or the purpose of determining the applicable limitation of time" for a wobbler, it must be deemed a felony. (See § 805.)

■ As the charge in count II must be deemed a felony, sections 801.5 and 803, subdivision (c), providing a four-year term for all fraud-type felonies, apply. Contrary to Soni's characterization, the charge does not become a misdemeanor "for all purposes" as described in section 17, subdivision (b), because section 805, subdivision (a), prevails over section 17 for statute of limitations purposes. The *Sillas* opinion directly addressed this issue. Quoting from *Ongley*, the *Sillas* court concluded, " '[t]he Legislature clearly intends that the felony statute of limitations apply to crimes defined as "wobblers," without regard to reduction to misdemeanor after the filing of the complaint. . . . [The defendant] contends there is an impermissible conflict between [Penal Code,] section 17, subdivision (b)'s phrase "for all purposes" and the provisions of section 805, subdivision (a). The Legislature, however, is within its power to qualify general statutory language by a more specific provision.' (*People v. Superior Court (Ongley), supra,* 195 Cal.App.3d at p. 169.)" (*People v. Sillas, supra,* 100 Cal.App.4th at p. Supp. 4.) Thus, "[f]or purposes of determining the statute of limitations for a wobbler, section 805, subdivision (a) controls, not section 17, subdivision (b). . . ." (*Ibid.*)

■ It is irrelevant that the prosecution chose to charge Soni with a misdemeanor violation of section 532a. That offense is a wobbler, and thus must be treated as a felony for purposes of determining the applicable limitation of actions. Under section 803, subdivision (c), a limitations period

of four years is provided for all fraud-type felonies. As there is no dispute as to the fraudulent nature of section 532a, the four-year term applies to count II, thereby permitting prosecution as of the issuance of the arrest warrant.

### Counts IV and V: Filing False Documents

Counts IV and V charged Soni with filing false documents—a violation of section 115, subdivision (a)—occurring in August 1997. The arrest warrant issued in November 2001, more than three years after their occurrence and thus beyond the limitations period of three years for general felonies. (See § 801.) However, a four-year term is provided under section 801.5, if the offense is one that falls under the terms of section 803, subdivision (c). (See fn. 5, *ante.*) For that reason, the prosecution alleged in the information that the offenses were not "discovered" until December 1, 1998, the date on which Sareen first reported the improper credit information use by Soni. Through this special allegation, the prosecution attempted to trigger the four-year term of section 801.5 and the special commencement provision of section 803, subdivision (c): "A limitation of time prescribed in this chapter does not commence to run until the discovery of an offense described in this subdivision. . . ."

■ Soni responds that the prosecution's allegations triggering the provision were not proven at trial. To the contrary, she characterizes Sareen's testimony as showing that Sareen learned of the improper use of her credit information a few months *before* her first report to the police on December 1, 1998. However, discovery of a loss by the victim *alone* is insufficient to trigger the running of the limitations period: "Literally, . . . discovery of a loss, without discovery of a criminal agency, is not enough." (*People v. Swinney* (1975) 46 Cal.App.3d 332, 340 [120 Cal.Rptr. 148].) The testimony was sufficient to show that Sareen pursued explanation for the financial discrepancies which she learned over the course of several months and released the information to the authorities on December 1, 1998. From these facts, the jury could reasonably infer discovery of the criminal agency of the crime occurred on that date. (Generally, *id.* at p. 339.)

■ Her main argument, however, is an attack on the applicability of section 803, subdivision (c), to a violation of section 115, as that offense is not listed in section 803, subdivision (c) at all. Section 803, subdivision (c) applies to all those listed offenses[6] *and* all others which fall under the

---

[6] Section 803, subdivision (c) lists the following offenses: (1) "Grand theft of any type, forgery, *falsification of public records,* or . . . bribe[ry] by a public official[;] [¶] (2) A violation of Section 72, 118, 118a, 132, 134 or 186.10[;] [¶] (3) A violation of Section 25540 . . . or Section 25541 of the Corporations Code[;] [¶] (4) A violation of Section 1090 or 27443 of the Government Code[;] [¶] (5) Felony welfare fraud or Medi-Cal fraud . . . [;] [¶] (6) Felony

description of "an offense punishable by imprisonment in the state prison, a material element of which is fraud or breach of a fiduciary obligation, . . . including, *but not limited to*," the listed offenses. (§ 803, subd. (c), italics added.) As cited by the trial court, and reiterated by the Attorney General, a violation of section 115 is governed by sections 801.5 and 803, subdivision (c), notwithstanding its absence from the list of specific offenses. The issue was addressed and resolved adversely to Soni in *People v. Bell* (1996) 45 Cal.App.4th 1030 [53 Cal.Rptr.2d 156]. Although section 115[7] was not included in section 803, subdivision (c)'s specific list, section 115 has a "sibling" with a striking resemblance in section 132, and section 132 *was* so included.[8]

More importantly, the statute explicitly states its list of offenses is neither exclusive nor exhaustive. Given that the purpose of "section 115 is to protect the integrity and reliability of public records[,] . . . the running of the statute of limitations as to section 115 is tolled until the discovery of the crime." (*People v. Bell, supra*, 45 Cal.App.4th at p. 1061; see also *People v. Guevara* (2004) 121 Cal.App.4th 17, 25 [16 Cal.Rptr.3d 738] [§ 803, subd. (c)'s tolling provision applicable to violations of § 18203 of Elections Code although not statutorily listed].)

Soni appeals to us to reject the *Bell* holding and rationale, contending the Legislature, subsequent to the *Bell* opinion, passed section 803.5, effective January 2004. Section 803.5 explicitly mandated the commencement of the running of the limitations period after "the discovery of the offense." By this action, she contends, the Legislature clearly showed its intent was *not* to include section 115 within the provisions of section 803, subdivision (c) prior to its enactment of section 803.5. However, we find both the discussion in *Bell* and in *Guevara* persuasive that—regardless of subsequent actions by the Legislature—the terms of section 803, subdivision (c) applied to the violation of section 115 as charged against Soni in counts IV and V.

---

insurance fraud . . . [;] [¶] (7) A violation of Section 580, 581, 582, 583, or 584 of the Business and Professions Code[;] [¶] (8) A violation of Section 22430 of the Business and Professions Code[;] [¶] (9) A violation of Section 10690 of the Health and Safety Code[;] [¶] (10) A violation of Section 529a[;] [¶] (11) A violation of subdivision (d) or (e) of Section 368."

[7] Section 115, subdivision (a) provides that "[e]very person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony."

[8] Section 132 provides that "[e]very person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or ante-dated, is guilty of felony."

## III

## DISPOSITION

The judgment sending Soni to prison for three years is affirmed.

Rylaarsdam, J., and O'Leary, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 22, 2006, S140557. George, C. J., did not participate therein.